

**AMSTER ROTHSTEIN & EBENSTEIN LLP**
*Intellectual Property Law*

| Partners | Founding Partners | Associates | Of Counsel |
|---|---|---|---|
| Daniel Ebenstein | Morton Amster (*Retired*) | Benjamin Charkow | Philip H. Gottfried |
| Neil M. Zipkin | Jesse Rothstein (*1934-2003*) | Suzue Fujimori | Anne Hassett |
| Anthony F. Lo Cicero | | Jessica Capasso | |
| Kenneth P. George | *Senior Counsel* | Brian Amos, Ph.D. | |
| Chester Rothstein | Marion P. Metelski | Hajime Sakai, Ph.D. | |
| Craig J. Arnold | Alan D. Miller, Ph.D. | David P. Goldberg | |
| Charles R. Macedo | Marc J. Jason | Sandra A. Hudak | |
| Brian A. Comack | Richard S. Mandaro | Tuvia Rotberg | |
| Max Vern | Matthieu Hausig | Dexter Chang | |
| Holly Pekowsky | | Keith J. Barkaus | |
| Benjamin M. Halpern★ | | Michael R. Jones | |
| Douglas A. Miro | | | ★ Not admitted in New York |
| Mark Berkowitz | | | |

90 Park Avenue
New York NY 10016

Main 212 336 8000
Fax   212 336 8001
Web   www.arelaw.com

September 25, 2020

Richard S. Mandaro
Direct 212 336 8106
E-mail rmandaro@arelaw.com

**VIA ECF**

Hon. Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Josie Maran Cosmetics, LLC v. Shefa Group LLC d/b/a Morning Beauty*
**Case No. 20 Civ. 03702 (NGG-JO)**
**Request for Pre-Motion Conference and Extension of Time to Answer**

Dear Judge Garaufis:

We represent Defendant Shefa Group LLC d/b/a Morning Beauty ("Morning Beauty") in the above-referenced case. This letter is submitted in accordance with Your Honor's Individual Rules, Par. IV.A, to request a pre-motion conference and to request an extension of time to respond to the Complaint (ECF No. 1) pending the outcome of Morning Beauty's anticipated Rule 12(b)(6) pre-answer motion to dismiss.

In its Complaint, Plaintiff Josie Maran Cosmetics, LLC ("Plaintiff") asserts federal trademark infringement, unfair competition, trademark dilution and related state law claims against Morning Beauty related to the sale of cosmetic products bearing Plaintiff's trademarks ("Josie Maran Products"). As discussed below, all claims asserted against Morning Beauty should be dismissed under Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim under the Lanham Act or state law.

**I.   Background**

This case relates to the resale of ***genuine*** cosmetic products by Morning Beauty and, more specifically, to Plaintiff's attempts to interfere with Morning Beauty's legitimate right to resell

these products on Amazon, a critical sales channel. Morning Beauty operates an Amazon storefront that resells various products, including Josie Maran Products. The Josie Maran Products sold by Morning Beauty on Amazon are all brand new and in their original condition (*i.e.*, they are not altered or modified).

Plaintiff's Complaint alleges seven causes of action, namely, (1) Trademark Infringement; (2) Unfair Competition; (3) Trademark Dilution; (4) Common Law Trademark Infringement; (5) Dilution under N.Y Gen. Bus. L. §360-l; (6) Deceptive Business Acts or Practices under N.Y. Gen. Bus. Law §349; and (7) Declaratory Judgment/Injunctive Relief. However, a close review of the underlying allegations of these claims reveals that they all rely upon the same limited set of factual allegations, namely (i) that the products being sold by Morning Beauty do not come with Plaintiff's consumer *warranty* because they are being sold without Plaintiff's consent or authorization, and (ii) that Morning Beauty does not abide by certain *quality controls* recommended by Plaintiff. Based on the alleged lack of these product warranty and quality controls, Plaintiff claims that the authentic products sold by Morning Beauty are not genuine and materially different from products sold by Plaintiff or authorized resellers.

In reality, Plaintiff simply contests Morning Beauty's resale of genuine products on Amazon, a sales channel that Plaintiff seeks to control under the false pretense of "trademark law." However, the well-established "first sale" doctrine limits trademarks owners like Plaintiff from using the Lanham Act and other trademark laws to restrict the sale of their genuine products on the free market after their first sale. After the first sale, a trademark holder may establish infringement only if it can demonstrate one of two exceptions to the first sale doctrine. As discussed below, based on the spurious and conclusory allegations of the Complaint, Plaintiff cannot establish the elements of either of the exceptions, namely the "quality control exception" or the "materially difference exception," requiring dismissal of the Complaint.

## II.     **Anticipated Rule 12(b)(6) Motion to Dismiss on All Counts of the Complaint**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a complaint that contains only "naked assertion[s]" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Twombly*, 550 U.S. at 555, 557. Here, at best, Plaintiff's Complaint merely mimics the required elements of its claims in conclusory fashion.

More specifically, under the "first sale doctrine," the resale of genuine goods does not constitute trademark infringement. Thus, in order to state a claim, Plaintiffs must invoke one of the exceptions to the doctrine, namely: (1) the quality control exception; or (2) the material difference exception. *See Polymer Tech. Corp.,* 975 F.2d at 61; *Davidoff & Cie, S.A. v. PLD Int'l*

*Corp.*, 263 F.3d 1297, 1301–02 (11th Cir. 2001); *see also Coty Inc. v. Cosmopolitan Cosmetics Inc.*, 432 F. Supp 3d 345, 351 (S.D.N.Y. 2020).

Here, the Complaint does not (and cannot) plead the necessary facts to state a claim for a cause of action of under either of these exceptions. This is because Defendant's mere resale of Plaintiff's genuine cosmetic items without Plaintiff's authorization is simply not actionable. *See Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992) (the First Sale Doctrine carves out an exception for the resale of "genuine goods bearing a true mark even though the sale is not authorized by the mark owner.") (quoting *NEC Electronics v. Cal Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).

First, the Plaintiff fails to adequately plead facts necessary to meet the requirements of the quality control exception. For example, the Complaint blindly alleges that the resale of ***genuine*** cosmetic products constitutes trademark infringement because "***[u]pon information and belief***, Defendant does not abide by Plaintiff's quality controls nor does Defendant offer the same level of customer service as Authorized Resellers." (ECF No. 1 at ¶53 (emphasis added).) But, "'quality control' is not a talisman the mere utterance of which entitles the trademark owner to judgment." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998) (citing *Polymer Tech. Corp.,* 37 F.3d at 78–80)). Rather, under Second Circuit law, a complaint must allege sufficient facts to show that the quality control procedures are "***legitimate, substantial, and nonpretextual" and that the trademark owner "abides by these procedures***." *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). The allegations of Plaintiff's Complaint fail to support that these requirements are met.

Plaintiff's Complaint vaguely references a "Resale Policy" buried on its website, but Plaintiff's Complaint does not allege the required legitimate, substantial, and nonpretextual quality control procedures, nor does it claim that Plaintiff and its authorized resellers actually abide by these procedures.

Further, Plaintiff's Complaint does not meet the requirement that the alleged nonconforming sales will diminish the value of the mark. *Id*. The allegations in Plaintiff's Complaint regarding "several test buys" of products (ECF No. 1, ¶¶59-60) and reference to a few irrelevant anonymous reviews on Amazon for other products (*Id*. ¶65) does not in any way support that the value of Plaintiff's trademarks are in any way being diminished. By themselves these asserted facts are insufficient to show any alleged diminished value of Plaintiff's marks and therefore cannot support that the products sold by Morning Beauty were not genuine.

Similarly, Plaintiff has not alleged sufficient facts to support application of the alternative material difference exception to the first sale doctrine. The Second Circuit has held that "goods are not genuine if they . . . differ materially from the product authorized by the trademark holder for sale." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009)(citing *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 73 (2d Cir. 1987)). Importantly, a material difference is one "***consumers would likely deem relevant*** when considering a purchase of the product." *Id*. at 246 (emphasis added.) Here, it is undisputed that Morning Beauty is selling

genuine Josie Maran products, and Plaintiff's limited and conclusory allegations of missing quality controls is insufficient to invoke the material difference exception as a matter of law. *See, e.g.*, *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, 432 F. Supp 3d 345, 352 (S.D.N.Y. 2020) ("[t]he Court declines Plaintiff's invitation to conclude that a difference in quality control procedures alone could be material to consumers' decisions to purchase Plaintiffs' Fragrances."). Plaintiff's remaining attempts to avoid the first doctrine are likewise non-starters. The Complaint alleges that the Josie Maran Products sold by Morning Beauty are somehow "materially different" because they: (1) contain a sticker (specified by Amazon) and (2) do not come with Plaintiff's consumer warranty. (See, *e.g.*, ECF No. 1 at ¶¶55, 66, 74, 91, 95, 108, 125, 134, 138 and 154.). But placing a sticker "on a resold item is par for the course" and is not actionable. *See Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*, No. 16cv751-LAB (WVG), 2017 U.S. Dist. LEXIS 28297, at *3 (S.D. Cal. Feb. 28, 2017) (granting motion to dismiss where complaint "didn't adequately allege how Walmart changed the character of Huf's shoes by obscuring barcodes" with a required sticker).

Further, Plaintiff's "warranty" argument fails for numerous reasons, including that this argument is contrary to New York General Business Law §369-b, which expressly prohibits a manufacturer from disclaiming a warranty in connection with a product sold by a New York distributor. *See Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 227 (S.D.N.Y 2011) (finding that "Bel Canto's stated policy of refusing to honor warranties of products for the sole reason that they were sold by unauthorized dealers is contrary to GBL 369-b").

Thus, based on the foregoing, each of Plaintiff's causes of action are subject to dismissal.

**III.      Request for Extension of Time to Respond to Complaint**

Based on Your Honor's Individual Rules, Par. IV.A.3, we are simultaneously requesting an extension of time to answer the Complaint until such time that Defendant's intended Rule 12(b)(6) motion is fully briefed and decided. Such an extension will not affect any other dates. This is a new case which is still pre-initial conference without any other scheduled dates.

An answer to the Complaint is currently due September 28, 2020. There has been one prior two-week extension of time to respond to the Complaint granted which was consented to by Plaintiff.

Thank you for your consideration.

> Very truly yours,
>
> AMSTER, ROTHSTEIN & EBENSTEIN LLP
>
> */s/Richard S. Mandaro*
>
> Richard S. Mandaro

cc:	Alex Jones (Via Email)
	Alexander Malyshev (Via Email)
	*Counsel for Plaintiff*