# CARTER LEDYARD & MILBURN LLP

*Counselors at Law*

**Alexander G. Malyshev**
Partner
•
*Direct Dial: 212-238-8618*
*E-mail: malyshev@clm.com*

*2 Wall Street*
*New York, NY 10005-2072*
•
*Tel (212) 732-3200*
*Fax (212) 732-3232*

*570 Lexington Avenue*
*New York, NY 10022-6856*
*(212) 371-2720*

October 5, 2020

**BY EFILE**

Hon. Nicholas G. Garaufis, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Josie Maran Cosmetics, LLC v. Shefa Group LLC d/b/a Morning Beauty,*
             Case No. 1:20-cv-03702-NGG-JO (E.D.N.Y. 2020)

Dear Judge Garaufis:

      We are co-counsel to Plaintiff Josie Maran Cosmetics, LLC ("***JMC***"). We write in accordance with Section IV(A)(2) of Your Honor's Individual Practices in advance of the pre-motion conference on the anticipated motion to dismiss to be filed by Defendant Shefa Group LLC d/b/a Morning Beauty's ("***Morning Beauty***"). *See* ECF Dkt # 9. As ordered, the parties will confer and propose mutually agreeable dates for the conference to the Court.

      Morning Beauty is and has been selling JMC products (the "***Products***") that are <u>materially different</u> than genuine JMC products. *See Coty Inc. v. Cosmopolitan Cosmetics Inc.*, No. 18 CV 11145, 2020 U.S. Dist. LEXIS 4272, *13-14 (S.D.N.Y. Jan. 9, 2020), quoting *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 644 (1st Cir. 1992) ( "a material difference 'may well turn an otherwise "genuine" product into a "counterfeit" one . . . because a difference in products bearing the same name confuses consumers and impinges on the . . . trademark holder's goodwill."). These sales of materially different Products infringe on JMC's intellectual property rights, damage JMC's reputation and goodwill, and ultimately harm consumers.

      Product sold by Morning Beauty are materially different than genuine products (and therefore not protected by the First Sale Doctrine) because these Products, which are offered as new through Amazon's marketplace: (i) have not been handled and processed in accordance with JMC's quality controls; (ii) do not come with JMC's warranty; (iii) have damaged/altered packaging, and (iv) are potentially returned and/or used products. These allegations demonstrate material differences in the products and therefore support JMC's claim. The allegations have also been sufficiently pleaded in the Complaint so as to withstand a motion to dismiss. Indeed, in *Coty*, the court denied the defendant's motion to dismiss where the plaintiffs "plausibly alleged a material difference between the Decoded Products and genuine fragrances based on damaged packaging and the lack of quality control procedures." *Coty*, 2020 U.S. Dist. LEXIS 4272 at *13.

9737959.1

I.      **Morning Beauty Does Not Comply with JMC's Legitimate Quality Control Protocols.**

The Complaint specifically identifies legitimate, substantial, nonpretextual quality control procedures mandated by JMC and followed by JMC and its authorized resellers. Specifically, JMC requires that Authorized Resellers must: (i) comply with relevant material handling protocols; (ii) use only secure, climate-controlled means of storage; (iii) promptly inspect the Products for damage, defects, evidence of tampering, or other non-conformances; (iv) refrain from selling any Products with any damage, defects, evidence of tampering, or other non-conformances; and (v) not alter the Products' original packaging and labeling. (ECF # 1 at ¶¶17-23). JMC ensures that Authorized Resellers comply with these requirements to protect consumers and its brand. Morning Beauty does not comply with these requirements, and as such, consumers receive a materially different JMC product when they purchase from Morning Beauty.

II.     **Morning Beauty's Products Do Not Come with JMC's Warranty.**

Morning Beauty is selling products which do not come with JMC's warranty. "JMC cannot and does not warrant products of unknown origin, quality, and condition." (*See* ECF # 1 at ¶¶24-29, 55). As an initial matter, selling products which do not come with a manufacturer's warranty as new is prohibited by Amazon's listing guidelines. And, crucially, the lack of a manufacturer warranty has been routinely held to be a material difference important to consumers and sufficient to render a product non-genuine. *ABG Prime Grp., Inc. v. Innovative Salon Prods.*, No. 17-12280, 2018 U.S. Dist. LEXIS 98196, at *11-12 (E.D. Mich. June 12, 2018); *Tacori Enters. v. Michael Joaillier, Inc.*, 207 F. Supp. 3d 799, 805 (S.D. Ohio 2016); *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2013 U.S. Dist. LEXIS 201896, at *7 (S.D. Cal. Oct. 3, 2013). At a minimum, courts find that the significance of a missing warranty to consumers is a fact-specific question which is not suitable to be decided at the pleading stage. *See, e.g., Swatch S.A. v. New City Inc.*, 454 F. Supp. 2d 1245, 1251 (S.D. Fla. 2006); *Otter Prods. v. Cloudseller, LLC*, 2019 U.S. Dist. LEXIS 224515, at *20 (D. Colo. Dec. 3, 2019).

Morning Beauty's reliance on GBL §369-b, as applied by *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208 (S.D.N.Y 2011), to rebut JMC's warranty argument is unfounded and misguided. §369-b provides that a manufacturer may not limit its warranty "***solely*** for the reason that such merchandise is sold by a particular dealer or dealers." (emphasis added). In *Bel Canto,* the Court found that: (1) "GBL 369-b only bans refusals to honor warranties based *solely* on a dealer's unauthorized status"; (2) "A manufacturer may have other reasons for refusing to honor a warranty, and nothing in GBL 369-b prevents the manufacturer from enforcing such restrictions"; and (3) the plaintiff had a "legitimate policy of refusing warranty service for products — even products sold in New York transactions — that bear altered serial numbers." *Bel Canto*, 837 F. Supp. 2d, at 228-229, 231.

Likewise, JMC limits its warranty in cases where the product has not been subjected to JMC's quality controls. As JMC States in its Resale Policy, and in its listings on Amazon, its warranties "are only valid on products purchased from Josie Maran Cosmetics or from one of our official authorized retail partners" because "Josie Maran Cosmetics is unable to ensure the quality of its products when sold by unauthorized sellers or through unauthorized channels." (ECF # 1 at

¶¶25-26). Failure to abide by quality controls have been held to be a legitimate basis for denying warranty coverage. *See Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-CV-00748-DAK, 2019 U.S. Dist. LEXIS 104393, at *21 (D. Utah June 21, 2019) ("[ Skullcandy] limits the Warranty based on whether a reseller's products have been subjected to Skullcandy's strict quality controls. Consequently, Defendants cannot rely on section 369-b to refute Skullcandy's material difference argument.").

### III.     Morning Beauty Sells JMC Products with altered packaging and labeling.

JMC's Authorized Resellers cannot alter the Products' original packaging and labeling. (ECF # 1 at ¶21). This ensures that consumers receive a consistent, identifiable, well-protected, and easy-to-use product. Morning Beauty is selling JMC products with obscured barcodes, use information, and ingredient lists, as well as damaged packaging or packaging that appears to have been previously opened. (ECF # 1 at ¶¶60-71). As a result of these material differences, consumers may not be able to check for allergens, and may miss important directions for proper use of the JMC products. Additionally, the damaged packaging may not properly protect the product in some cases. These material differences not only prevent Morning Beauty from relying on the First Sale Doctrine, but it also may lead to harm to consumers.

### IV.     Morning Beauty Sells Returned or Used JMC Products as New.

Morning Beauty omits from its letter JMC's allegations (supported by photographic evidence collected through test buys) that Morning Beauty sells returned and/or used products as new. (*See* ECF # 1 at ¶¶ 56-74). JMC's allegations are bolstered by: (i) Morning Beauty's refusal to identify its source of supply, (ii) reviews left by third-party customers on Morning Beauty's page which make similar allegations, and (iii) Morning Beauty's low prices, which appear to be commercially non-viable if the products are being purchased through legitimate channels. (*See* ECF # 1 at ¶¶ 56-74).

Used or returned products sold as new are not genuine. *See, e.g. RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781, at *23-26 (E.D. Mich. Dec. 23, 2014) (finding that "the products were not 'genuine' because they were sold as new rather than used" where "many of the goods showed signs of non-factory resealing" and where "distribution of returned goods is contrary to the quality control process established by plaintiffs, which does not include selling or refurbishing returned product").

For all the foregoing reasons, the JMC products sold by Morning Beauty are materially different than genuine JMC Products, and Morning Beauty's use of JMC's trademarks in connection with such sales serves as the proper basis for each of JMC's claims. Moreover, the allegations supporting each of these claims are properly pled and are sufficient to withstand a motion to dismiss.

CARTER LEDYARD & MILBURN LLP


By:   /s/ *Alexander G. Malyshev*
      Alexander G. Malyshev
      Theodore Y. McDonough
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
Email: malyshev@clm.com
       mcdonough@clm.com

KOHRMAN JACKSON & KRANTZ LLP

      Alex E. Jones (*Pro Hac Vice* to be filed)
One Cleveland Center
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Phone: 216-736-7241
Fax: 216-621-6536
Email: aej@kjk.com

*Attorneys for Plaintiff Josie Maran Cosmetics, LLC*

Cc:   All Counsel of Record (*via* ECF)