UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSIE MARAN COSMETICS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>SHEFA GROUP LLC D/B/A MORNING BEAUTY,<br><br>      Defendant. | Case No. 1:20-cv-03702-NGG-CLP |
| SHEFA GROUP LLC,<br><br>      Counterclaimant,<br><br>v.<br><br>JOSIE MARAN COSMETICS, LLC,<br><br>      Counterclaim-Defendant. | |

**DEFENDANT SHEFA GROUP, LLC'S OPPOSITION TO
JOSIE MARAN COSMETICS, LLC'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS**

**Date of Service: May 21, 2021**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND.................................................................................2

    A. The Parties ..................................................................................................2

    B. JMC's Baseless Legal Threats and Filing of False IP Complaints.........................2

    C. Procedural History ......................................................................................3

III. LEGAL STANDARD............................................................................................4

IV. THE COUNTERCLAIMS ARE ADEQUATELY PLEAD..............................................5

    A. The Counterclaims Sufficiently Plead a Claim for a Declaratory Judgment of No Trademark Infringement or Counterfeiting (Counterclaim I) .......................5

    B. The Counterclaims Sufficiently Plead a Lanham Act Section 43(a) Claim (Counterclaim II) ..........................................................................................7

        1. JMC's False Statements Were Sufficiently Disseminated..........................8

    C. The Counterclaims Sufficiently Plead a Claim for Unfair Competition Pursuant to New York Common Law (Counterclaim III) .....................................10

    D. The Counterclaims Sufficiently Plead a Claim for Tortious Interference with Contract and Business Relations (Counterclaim IV)....................................11

V. CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance 2000, Inc. v. Harwick*,
   No. 16-CV-1037S,
   2019 WL 6725977 (W.D.N.Y. Dec. 11, 2019) ................................................................. 11

*Am. Broad. Co. v. Maljack Prods., Inc.*,
   34 F. Supp. 2d 665 (N.D. Ill. 1998) ................................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 5

*Baiqiao Tang v. Wengui Guo*,
   No. 17 Civ. 9031 (JFK),
   2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019) ................................................................. 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 4

*Canon U.S.A., Inc. v. F & E Trading LLC*,
   No. 2:15-cv-6015 (DRH)(AYS),
   2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ................................................................... 6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ........................................................................................................... 8

*Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ..................................................................................... 12

*Display Works, LLC v. Pinnacle Exhibits, Inc.*,
   No. WMN- 15-2284,
   2015 WL 7454084 (D. Md. Nov. 24, 2015) ................................................................... 10

*EIS, Inc. v. WOW Tech Int'l GmbH*,
   No. CV 19-1227-LPS,
   2020 WL 7027528 (D. Del. Nov. 30, 2020) ..................................................................... 2

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ................................................................................................ 5

*Garmon Corp. v. Vetnique Labs, LLC*,
   No. 19 C 8251,
   2020 WL 3414983 (N.D. Ill. June 22, 2020) .................................................................... 9

*GDM Enterprises, LLC v. Astral Health & Beauty, Inc.*,
  No. 17-1069-CV-W-SRB,
  2018 WL 3453475 (W.D. Mo. July 17, 2018) ................................................................. 6

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010) ......................................................................................... 5

*Ivy League Sch., Inc. v Danick Indus., Inc.*,
  999 N.Y.S.2d 797 (N.Y. Sup. Ct. 2014) ..................................................................... 11

*Katz v. Travelers*,
  241 F. Supp. 3d 397 (E.D.N.Y. 2017) ........................................................................ 12

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
  383 F. Supp. 3d 187 (S.D.N.Y. 2019) .......................................................................... 7

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ........................................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ..................................................................................................... 7

*Lines v. Cablevision Sys. Corp.*,
  No. 04 CV 2517 DRH ETB,
  2005 WL 2305010 (E.D.N.Y. Sept. 21, 2005) ........................................................... 12

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..................................................................................................... 6

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
  880 F. Supp. 1005 (S.D.N.Y. 1994) ............................................................................. 9

*Navika Capital Grp., LLC v. Doe*,
  No. 14 CV 5968 (DLI) (CLP),
  2017 U.S. Dist. LEXIS 2926 (E.D.N.Y. Jan. 6, 2017),
  *adopted*, 2017 U.S. Dist. LEXIS 40820 (Mar. 20, 2017) ......................................... 13

*SanDisk Corp. v. STMicroelectronics., Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007) .................................................................................... 6

*Seven-Up Co. v. Coca-Cola Co.*,
  86 F.3d 1379 (5th Cir. 1996) ........................................................................................ 9

*Skratch Labs LLC v. Delivery Native, Inc.*,
  No. 20-CV-1565-WJM-STV,
  2021 WL 1406021 (D. Colo. Apr. 14, 2021) ............................................................... 6

*Unicorn Global, Inc. v. GoLabs, Inc.*,
    447 F. Supp. 3d 535 (N.D. Tex. Mar. 20, 2020) ..................................................................... 9

*VG Innovations, Inc. v. Minsurg Corp.*,
    No. 8:10-cv-1726,
    2011 WL 1466181 (M.D. Fla. Apr. 18, 2011) ......................................................................... 8

*Vitamins Online, Inc. v. HeartWise, Inc.*,
    207 F. Supp. 3d 1233 (D. Utah 2016) ..................................................................................... 9

**Statutes and Rules**

15 U.S.C. § 1125(a) ........................................................................................................................ 7

Fed. R. Civ. P. 8 ............................................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 4, 5

Fed. R. Civ. P. 13 ........................................................................................................................... 4

Defendant/Counterclaimant Shefa Group LLC d/b/a Morning Beauty ("Morning Beauty") respectfully submits this Opposition to Plaintiff/Counterclaim-Defendant Josie Maran Cosmetics, LLC's ("JMC") Motion to Dismiss Defendant's Counterclaims, which was served on April 30, 2021 ("Motion" or "Mot.").

## I. INTRODUCTION

This case relates to the resale of genuine cosmetic products by Morning Beauty and, more specifically, to JMC's attempts to interfere with Morning Beauty's legitimate right to resell these products on Amazon, a critical sales channel. Morning Beauty operates an Amazon storefront that resells various products, including JOSIE MARAN-branded products ("Josie Maran Products"). The Josie Maran Products sold by Morning Beauty on Amazon are all brand new and in their original condition (i.e., they are not altered or modified).

Nonetheless, JMC brought this action asserting trademark infringement and related claims. However, the well-established "first sale" doctrine limits trademarks owners like JMC from using the Lanham Act and other trademark laws to restrict the sale of their genuine products on the free market after their first sale. In reality, JMC simply contests Morning Beauty's resale of genuine products on Amazon, a sales channel that JMC seeks to control.

Indeed, prior to bringing the present action, JMC made several reports to Amazon, falsely asserting that Morning Beauty was selling "counterfeit" Josie Maran Products. Such false reports resulted in the deactivation of Morning Beauty's listings and other harm to Morning Beauty's seller account. JMC was well-aware that its representations to Amazon were false; it simply sought to eliminate its competition and maintain pricing on Amazon, through unlawful means.

Morning Beauty's Counterclaims go far beyond the requirements of notice pleading—they explain precisely why Morning Beauty is entitled to a declaratory judgment of non-infringement, as well as damages for unfair competition (under federal and New York law) and tortious

interference. Courts have regularly sustained similar claims involving disputes between sellers on the Amazon platform. *See, e.g.*, *EIS, Inc. v. WOW Tech Int'l GmbH*, No. CV 19-1227-LPS, 2020 WL 7027528, at *1 (D. Del. Nov. 30, 2020).

As discussed further below, JMC's arguments do not support dismissal of any claim.

## II.     FACTUAL BACKGROUND

### A.     The Parties

JMC is a distributor of cosmetics and skin care products, which it markets and sells under the mark JOSIE MARAN. (ECF No. 22, Countercl. ¶ 5.) JMC distributes Josie Maran Products in various channels, including through Amazon. (ECF No. 1, ¶ 13.)

Morning Beauty distributes consumer products online, including through an Amazon storefront. (ECF No. 22, Countercl. ¶ 7.) Since its formation, Morning Beauty has served hundreds of thousands of customers through its Amazon storefront. (*See id.* at ¶ 8.) Among many other products, Morning Beauty has acquired and resold Josie Maran Products.

### B.     JMC's Baseless Legal Threats and Filing of False IP Complaints

The dispute between JMC and Morning Beauty dates back to at least 2018. Specifically, on or about November 16, 2018, JMC sent Morning Beauty a letter stating that Morning Beauty's sales of Josie Maran Products was unauthorized and violated JMC's intellectual property rights. (*Id.* at ¶ 41.) By letter dated November 29, 2018, Morning Beauty's intellectual property counsel informed JMC that the Josie Maran Products sold by Morning Beauty were genuine and noted that it appeared that JMC was attempting to engage in unfair competition. (*Id.* at ¶ 42.) JMC took no further action for several months.

However, in March 2019, JMC submitted multiple false reports to Amazon that the genuine Josie Maran Products being sold by Morning Beauty on Amazon were "counterfeit" ("Reports"). (*Id.* at ¶¶ 43, 50.) The Josie Maran Products at issue were, in fact, genuine, i.e., they were

originally manufactured and distributed by JMC. (*Id.* at ¶¶ 46–47.) JMC knew, or should have known, that its Reports to Amazon were false, (*id.* at ¶¶ 48–49), but, rather, sought to remove Morning Beauty from listings for Josie Maran Products through improper means. (*Id.* at ¶¶ 53–54, 118.)

As a result of the false Reports, Morning Beauty's listings relating to Josie Maran Products were suspended, resulting in an immediate loss of revenue. (*Id.* at ¶ 60.) In addition, damage has been caused to Morning Beauty's performance metrics, which continue to affect Morning Beauty's Amazon sales. (*Id.* at ¶¶ 69, 72.)

By letter dated March 18, 2019, Morning Beauty's counsel put JMC on written notice that JMC's complaints to Amazon were baseless and defamatory and demanded their retraction. (*Id.* at ¶ 55.) On or about March 19, 2019, JMC retracted its Reports by informing Amazon that they "were filed in error." (*Id.* at ¶ 56.)

### C. Procedural History

Just over a year after retracting its Reports to Amazon, on June 8, 2020, JMC filed a complaint in the United States District Court for the Central District of California alleging, *inter alia*, trademark infringement arising out of Morning Beauty's sale of the very same goods for which JMC retracted Amazon Reports as "filed in error" ("California Action"). On July 17, 2020, Morning Beauty filed a motion to dismiss the California Action under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. On August 14, 2020, JMC filed a voluntary dismissal of the California Action, and filed the Complaint in the instant action.

The Complaint alleges seven causes of action, namely: (1) trademark infringement, under 15 U.S.C. §§ 1114 and 1125(a)(1)(A); (2) unfair competition, under 15 U.S.C. § 1125(a); (3) trademark dilution, under 15 U.S.C. § 1125(c); (4) common law trademark infringement; (5) dilution, under N.Y. Gen. Bus. L. §360-l; (6) deceptive business acts or practices, under N.Y.

Gen. Bus. Law § 349; and (7) "Declaratory Judgment/Injunctive Relief."  All seven claims turn on the allegation that Morning Beauty sold non-genuine Josie Maran Products.

On December 10, 2020, the parties submitted a Rule 26(f) Report, and the Court held an Initial Conference on December 30, 2020.  The Court set deadlines for the parties to exchange their initial disclosures and first sets of discovery requests.  (*See* Minute Order dated January 4, 2021.)  To date, the parties have exchanged, and provided written responses to these initial discovery requests.  However, neither party has produced any documents, and no depositions have been noticed or taken.  The primary obstacle to proceeding with discovery has been the parties' disagreement over the appropriate protective order that should apply in this action, which issue is currently before the Court.  (*See* ECF Nos. 24 & 25.)

On February 18, 2021, Morning Beauty filed its Answer to the Complaint, asserting affirmative defenses and counterclaims pursuant to Rules 8 and 13 of the Federal Rules of Civil Procedure.  The Counterclaims stem from JMC's interference with Morning Beauty's ability to sell Josie Maran Products on Amazon, which ultimately caused the suspension of Morning Beauty's listings.

On March 5, 2021, JMC sought permission to file the present Motion to dismiss Morning Beauty's Counterclaims.  A pre-motion conference was held on April 8, 2021, during which the Court permitted JMC to proceed with its Motion.  JMC served the present Motion on April 30, 2021.  JMC's Motion is essentially a repeat of its pre-motion letter, which argues without support that the Counterclaims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim

is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must be construed in the light most favorable to the non-moving party. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the pleader. *See Kim v. Kimm*, 884 F.3d 98, 102–03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV. THE COUNTERCLAIMS ARE ADEQUATELY PLEAD

### A. The Counterclaims Sufficiently Plead a Claim for a Declaratory Judgment of No Trademark Infringement or Counterfeiting (Counterclaim I)

JMC argues that Morning Beauty's first counterclaim for a declaratory judgment of non-infringement and no counterfeiting because it is allegedly the "flipside" of JMC's trademark infringement claim. (Mot. at 3–4.) However, JMC acknowledges that a court should entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." (*Id.* (quoting *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).)

Here, Morning Beauty's counterclaim adequately states a declaratory judgment counterclaim. There is a genuine case or controversy concerning whether Morning Beauty infringes JMC's trademark rights or any other rights, in view of JMC's false reports alleging that Morning Beauty sold "counterfeit" Josie Maran Products, thereby causing damage to Morning

Beauty. (*See, e.g.*, ECF No. 22, Countercl. ¶¶ 76–82.) Accordingly, "the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted). "[Morning Beauty] need not risk a suit for infringement by engaging in the identified activity [i.e., continuing to sell the same Josie Maran Products at issue] before seeking a declaration of its legal rights." *SanDisk Corp. v. STMicroelectronics., Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Further, "although the counterclaim for declaratory judgment shares many features of [JMC]'s claims of trademark infringement, [Morning Beauty's counterclaims include] allegations which enlarge the scope of the dispute beyond what [JMC] has pled." *Skratch Labs LLC v. Delivery Native, Inc.*, No. 20-CV-1565-WJM-STV, 2021 WL 1406021, at *4 (D. Colo. Apr. 14, 2021) (denying motion to dismiss). JMC not only created a case or controversy by filing suit in this action, but also by making Reports to Amazon alleging that Morning Beauty sells "counterfeit" Josie Maran Products. "[F]or all that [Morning Beauty] knows," JMC may "withdraw [its] suit without prejudice and continue broadcasting assertions of infringement" to Amazon. *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 2:15-cv-6015 (DRH)(AYS), 2017 WL 4357339, at *10–11 (E.D.N.Y. Sept. 29, 2017) (denying motion to dismiss declaratory judgment counterclaim) (quoting *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91 (2d Cir. 1939)). "[T]he counterclaim[] allow[s Morning Beauty] to persist in resolving the dispute between the parties, and to potentially obtain an award for attorney's fees." *GDM Enterprises, LLC v. Astral Health & Beauty, Inc.*, No. 17-1069-CV-W-SRB, 2018 WL 3453475, at *2 (W.D. Mo. July 17, 2018) (internal quotation omitted) (denying motion to dismiss defendants' non-infringement counterclaim).

Accordingly, JMC's Motion as to Counterclaim I should be denied.

### B. The Counterclaims Sufficiently Plead a Lanham Act Section 43(a) Claim (Counterclaim II)

Morning Beauty's Counterclaims assert claims of unfair competition and tortious interference based on JMC's false Reports to Amazon alleging that Morning Beauty's listings were infringing JMC's intellectual property rights. In arguing that these claims were not adequately pled, JMC ignores allegations in the Counterclaims in favor of its own self-serving presumptions.

The Lanham Act serves to "protect persons engaged in . . . commerce against unfair competition," which is concerned with "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 119, 131 (2014). Morning Beauty sufficiently pled that JMC violated the Lanham Act by disseminating false and injurious statements about Morning Beauty's business and products.

As relevant here, the Lanham Act provides that a party who "uses in commerce any . . . false or misleading representation of fact" regarding "any goods or services" is liable to anyone likely to be damaged if that false representation will likely cause confusion, mistake, or deception regarding "commercial activities by another person." 15 U.S.C. § 1125(a)(1). "The Second Circuit has adopted a three-part test to determine if the statements at issue are covered by the Lanham Act: the speech is covered if it is (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and, (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 248 (S.D.N.Y. 2019). Here, the Counterclaims sufficiently allege each of these elements.

The Counterclaims allege that, in order to gain a commercial advantage, JMC repeatedly contacted Morning Beauty's e-commerce provider, Amazon, claiming that Morning Beauty wase

infringing JMC's trademark rights. (ECF No. 22, Countercl. ¶¶ 43–44, 50.) The Counterclaims further allege that these false complaints were made "to ensure the suspension of [Morning Beauty]'s marketplace listings, control pricing and eliminate fair competition." (*Id.* at ¶ 68.) There is no other conceivable motive for JMC's false statements other than Morning Beauty's economic interests, and thus, they qualify as "commercial speech." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (commercial speech is any "expression related solely to the economic interests of the speaker and its audience").

The Counterclaims allege that JMC's false reports "actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that [Morning Beauty]'s products are counterfeit, thereby materially affecting their decision and ability to purchase [Morning Beauty]'s products." (ECF No. 22, Countercl. ¶ 88.) The false reports resulted in the removal of listing content and "damaged [Morning Beauty]'s metrics and caused [Morning Beauty] to lose the 'buy box" on many of its product listings (even after retraction of Reports)." (*Id.* at ¶¶ 60, 63, 69, 72.)

### 1. *JMC's False Statements Were Sufficiently Disseminated*

JMC's sole argument for the dismissal of Morning Beauty's unfair competition claims is that the false Reports were not part of an "organized ad campaign" but were made as "a *private* communication" to Amazon. (Mot. at 5.) But the Counterclaims allege that JMC's false statements were sufficiently disseminated to the relevant purchasing public to constitute commercial advertising. (ECF No. 22, Countercl. ¶¶ 88–92.)

"The requisite level of circulation and the relevant purchasing public will vary according to the industry." *VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726, 2011 WL 1466181, at *6 (M.D. Fla. Apr. 18, 2011). "Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough . . . ."

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996). Thus, whether the false representations were sufficiently disseminated is a factual issue not amenable to determination at the pleading stage. *See Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1020–21 (S.D.N.Y. 1994) (single letter sufficient because "tainting the goodwill of plaintiff with one purchaser could easily affect another purchaser's view").

JMC's Motion attempts to downplay the severity of its reports to Amazon. (Mot. at 5.) However, the direct effect of a fraudulent report of IP infringement in the e-commerce industry is significant. "The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to the world marketplace on a scale that no other online retailer can currently provide." (ECF No. 22, Countercl. ¶ 13.) Indeed, "[a]ny harm that comes to the relationship between [Morning Beauty] and Amazon creates a potential for serious and irreparable injury to [Morning Beauty]." (*Id.* at ¶ 22.) JMC's Reports caused Morning Beauty's listings to be removed from Amazon and irreparably damaged Morning Beauty's selling metrics. (*Id.* at ¶¶ 60, 69, 72.)

The repercussions of the false Amazon Reports are therefore significant to Morning Beauty. For this reason, courts have expressly recognized that the submission of false infringement reports to online marketplaces can constitute commercial advertising or promotion for purposes of Morning Beauty's Lanham Act claim. *See, e.g.*, *Garmon Corp. v. Vetnique Labs, LLC*, No. 19 C 8251, 2020 WL 3414983, at *6 (N.D. Ill. June 22, 2020) (denying motion to dismiss where moving party alleged to have submitted false reports of patent infringement to Amazon); *Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 545 (N.D. Tex. Mar. 20, 2020) (same); *see also Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1242 (D. Utah 2016) (alleged review manipulation "constitutes commercial advertising" because "that information was

9

disseminated to all . . . potential customers that visited the product pages"); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 677–78 (N.D. Ill. 1998) ("[N]othing in the language of the Lanham Act specifically requires a false representation be intended to influence the ultimate consumer.") (internal quotation omitted).

Here, as in the above cases, Morning Beauty has pled that JMC's false Reports directly resulted in the removal of listing content and were thereby disseminated to any actual or potential customer that sought to purchase Morning Beauty's products. These allegations far exceed the requirements of notice pleading. *See Display Works, LLC v. Pinnacle Exhibits, Inc.*, No. WMN-15-2284, 2015 WL 7454084, at *3 (D. Md. Nov. 24, 2015) ("required level of circulation . . . inappropriate [for determination] at the motion to dismiss stage").

### C. The Counterclaims Sufficiently Plead a Claim for Unfair Competition Pursuant to New York Common Law (Counterclaim III)

JMC argues that Morning Beauty's Counterclaim for unfair competition under New York common law fails "for the same reasons as its corresponding federal law claim." (Mot. at 6.)

But as discussed above (*see supra* § IV.B), the Counterclaims sufficiently plead a Lanham Act claim. "It is well-established that the elements necessary to prevail on causes of action for unfair competition under New York common law mirror the Lanham Act claims," and thus Morning Beauty's unfair competition claim is sufficient for the same reasons. *Baiqiao Tang v. Wengui Guo*, No. 17 Civ. 9031 (JFK), 2019 WL 6169940, at *5 (S.D.N.Y. Nov. 20, 2019) (internal quotation omitted) (denying motion to dismiss "unfair competition claim . . . for the same reasons as [the] Lanham Act claim"). As pled in substantial detail, JMC has engaged, in bad faith, in a scheme to eliminate competition and maintain pricing on online marketplace, including by making the knowingly false representations that Morning Beauty's Amazon listings were infringing JMC's trademark rights. (*See, e.g.*, ECF No. 22, Countercl. ¶¶ 23–26, 30–56, 61–62, 64, 67–68; *see also*

*supra* § IV.B.) JMC was not simply acting lawfully in pursuit of its own business interests—it knowingly and intentionally made false statements in an effort to harm Morning Beauty.

Further, "New York's law of unfair competition is a broad and flexible doctrine that depends more upon the facts set forth than in most causes of action." *Advance 2000, Inc. v. Harwick*, No. 16-CV-1037S, 2019 WL 6725977, at *7 (W.D.N.Y. Dec. 11, 2019) (internal quotation and modification omitted). "There is no complete list of the activities that are actionable as unfair competition and protection now extends in some cases to parties who are not even in competition." *Ivy League Sch., Inc. v Danick Indus., Inc.*, 999 N.Y.S.2d 797, 797 (N.Y. Sup. Ct. 2014). As discussed above, JMC's unlawful and deceitful actions have interfered with Morning Beauty's ability to fairly compete in the highly dynamic Amazon marketplace and have caused substantial harm to Morning Beauty. (*See supra* § IV.B.) Thus, the Counterclaims adequately plead common law unfair competition under New York law.

> **D.** **The Counterclaims Sufficiently Plead a Claim for Tortious Interference with Contract and Business Relations (Counterclaim IV)**

JMC argues that the intentional interference with contract and business relations claim should be dismissed because it is allegedly "more properly identified as a defamation claim." (Mot. at 7.) However, JMC simply misreads Morning Beauty's counterclaim.

Contrary to JMC's arguments, Morning Beauty's claim is not based on "harm flowing from damage to Morning Beauty's ***reputation***." (*Id.* at 7 (emphasis added).) Although JMC's false reports certainly were defamatory, Morning Beauty's tortious interference counterclaim is based on the damage to its business relationship with Amazon due to JMC's false statements that ***specific products*** listed by Morning Beauty on the Amazon platform were "counterfeit." In other words, the proximate cause of the suspension of Morning Beauty's listings was Amazon's fear of liability

for listing (what it was told were) "counterfeit" products, and not from the concurrent harm done to Morning Beauty's reputation.

Thus, this situation is distinguishable from the facts in the case law cited by JMC for the general proposition that "New York law considers claims sounding in tort to be defamation claims where those causes of action seek damages ***only for injury to reputation***, or where the ***entire injury*** . . . flows from the effect on his reputation." *Katz v. Travelers*, 241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (emphasis added) (quoting *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012)) (cited by Mot. at 7). In the *Katz* case, the plaintiff alleged that he lost work as an expert witness because of false allegations that the plaintiff had lied under oath, and thus the alleged injury flowed entirely from damage to the plaintiff's reputation for honesty. *See* 241 F. Supp. 3d at 403, 407. JMC's other cited case law is similarly distinguishable from the relevant facts here. *See Chao*, 476 F. App'x at 895 (finding alleged harms all flowed from effect on plaintiff's reputation due to "false statements regarding [plaintiff]'s research integrity") (cited by Mot. at 7); *Lines v. Cablevision Sys. Corp.*, No. 04 CV 2517 DRH ETB, 2005 WL 2305010, at *2 (E.D.N.Y. Sept. 21, 2005) (explaining that plaintiff alleged that he was unable to find work because his name was associated with a widely publicized accounting scandal) (cited by Mot. at 7). Here, Morning Beauty's tortious interference counterclaim is not solely grounded in harm to its reputation; Morning Beauty was injured by the suspension of its listings for the particular products that JMC claimed were "counterfeit."

Indeed, the Counterclaims allege that (1) Morning Beauty is in a contractual (and profitable) relationship with Amazon (ECF No. 22, Countercl. ¶ 111; *see also id.* ¶¶ 14–22); (2) JMC was aware of that relationship but intentionally interfered with it by submitting false Reports (*id.* ¶¶ 112–113; *see also id.* ¶¶ 25–26); (3) JMC knew that the Reports were false, but

acted with specific intent to unfairly suppress competition and unlawfully increase their profits (*id.* at ¶¶ 42, 116–118, 121–122; *see also id.* at ¶¶ 23–26, 36, 48–49, 53–54, 56, 114, 116, 121–124); which (4) directly and proximately caused disruption of Morning Beauty's relationship and contract that Morning Beauty had with Amazon by causing the removal of Morning Beauty's listing content, irreparably damaging Morning Beauty's performance metrics, and putting its account at risk of suspension (*id.* at ¶¶ 115, 119–120, 124). Thus, allegations in the Counterclaims are sufficient to meet the pleading requirements for both tortious interference with contract and business relations. *See, e.g.*, *Navika Capital Grp., LLC v. Doe*, No. 14 CV 5968 (DLI) (CLP), 2017 U.S. Dist. LEXIS 2926, at *31–33 (E.D.N.Y. Jan. 6, 2017) (listing elements of tortious interference claims and recommending finding of liability), *adopted*, 2017 U.S. Dist. LEXIS 40820 (Mar. 20, 2017).

JMC's Motion as to Counterclaim IV should be denied.

## V. CONCLUSION

For the foregoing reasons, JMC's Motion should be denied.

Dated: May 21, 2021

By: *s/ Mark Berkowitz*
Mark Berkowitz
Tuvia Rotberg
Sandra A. Hudak
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: mberkowitz@tarterkrinsky.com
trotberg@tarterkrinsky.com
shudak@tarterkrinsky.com

***Attorneys for Defendant/Counterclaimant Shefa Group, LLC***

13

## CERTIFICATE OF SERVICE

I hereby certify that, on May 21, 2021, a true copy of the foregoing document entitled **DEFENDANT SHEFA GROUP, LLC'S OPPOSITION TO JOSIE MARAN COSMETICS, LLC'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS** was served via electronic mail upon counsel of record for Plaintiff upon the addresses listed below:

>Alex Jones (aej@kjk.com)
>Theodore Young McDonough (mcdonough@clm.com)
>Alexander Malyshev (malyshev@clm.com)

Dated: May 21, 2021      *s/ Mark Berkowitz*
                         Mark Berkowitz