UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSIE MARAN COSMETICS, LLC,

                              Plaintiff,

                -against-

SHEFA GROUP LLC, D/B/A MORNING
BEAUTY,

                              Defendant.

MEMORANDUM & ORDER

20-CV-3702 (NGG) (CLP)

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Plaintiff Josie Maran Cosmetics, LLC's
motion to dismiss Defendant Shefa Group LLC's counterclaims.
For the reasons stated below, the motion to dismiss the counter-
claims for a declaratory judgment, for unfair competition and
misleading or false representation under federal law, and for un-
fair competition under New York common law is GRANTED, but
the motion to dismiss the counterclaim for tortious interference
with a business relationship is DENIED.

I.   BACKGROUND

   A.   Factual Background

Plaintiff, Josie Maran Cosmetics, LLC ("JMC"), is a California-
based manufacturer and retailer of a cosmetic products, which
bear various registered trademarks. (*See* Compl. (Dkt. 1) ¶¶ 3,
11.) JMC permits only authorized resellers to sell its products,
and these authorized resellers must comply with JMC's Resale
Policy, which imposes storage, handling, packaging, condition
monitoring, safety, customer service, and recall program partici-
pation requirements. (*See id.* ¶¶ 15-41.) Defendant Shefa Group
LLC ("Shefa"), which is doing business as Morning Beauty, is a
Brooklyn-based reseller of consumer products. (*See* Countercl.
(Dkt. 22) ¶¶ 6-7.) Shefa sells JMC products through its Amazon

storefront. (*See id.* ¶¶ 7, 24-25.) JMC alleges that Shefa is not an authorized reseller, and JMC is thus unable to ensure Shefa's compliance with the Resale Policy. (*See* Compl. ¶ 52.) JMC suspects, based on test purchases of Shefa's products and Shefa's low prices, that Shefa is selling used or returned products in violation of the Resale Policy, which could result in sales of spoiled, broken, or otherwise defective products. (*See* Compl. ¶¶ 71-74.) Further, the JMC products sold by Shefa are "inferior . . . , as they do not come with a warranty or the same suite of services" nor are they "handled with the same quality controls." (*Id.* ¶ 74.) Shefa's sales of inferior and non-genuine products allegedly harm consumers and infringe on JMC's rights in its trademarks. (*See id.* ¶ 75.)

On or about November 16, 2018, JMC sent Shefa a letter, which stated that Shefa's sales of JMC products were unauthorized and violated JMC's intellectual property rights. (*See* Countercl. ¶ 41.) On November 29, 2018, Shefa responded, informing JMC that the products were genuine and accusing JMC of attempting to engage in unfair competition. (*See id.* ¶ 42.) Between February 3, 2020 and April 14, 2020, counsel for JMC sent Shefa at least four letters reiterating that these sales were unauthorized and in violation of JMC's intellectual property rights. (*See* Feb. 3, 2020 Ltr. (Dkt-1-2); Feb. 19, 2020 Ltr. (Dkt. 1-3); Mar. 20, 2020 Ltr. (Dkt. 1-4); Apr. 14, 2020 Ltr. (Dkt. 1-5).) Around the same time, in March 2019, JMC submitted at least three reports to Amazon (the "Amazon Reports") that the JMC products sold by Shefa were inauthentic and infringed on JMC's trademarks. (*See* Countercl. ¶¶ 44, 50.) Shefa contends that the Amazon Reports were made knowingly and in bad faith since JMC had conducted a test purchase and knew that the products were not "counterfeit." (*Id.* ¶¶ 48-54.) Shefa further alleges that its listings were suspended from Amazon as a result of the reports. (*See id.* ¶ 60.) Thus, on March 18, 2019, Shefa's counsel notified JMC that the Amazon

Reports were "baseless and defamatory and demanded their re-
traction." (*Id.* ¶ 55.) The next day, JMC informed Amazon that
the Amazon Reports "were filed in error." (*Id.* ¶ 57.)

### B.  Procedural History

On June 8, 2020, JMC filed a complaint in the United States Dis-
trict Court for the Central District of California alleging, *inter alia*,
trademark infringement arising out of Shefa's sales of JMC prod-
ucts. (*See* Compl. ¶ 47 n.1; Countercl. ¶ 57.) Shefa moved to
dismiss the California action for lack of personal jurisdiction un-
der Rule 12(b)(2) and for failure to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure. (*See* Countercl.
¶ 58.) On August 14, 2020, JMC filed a voluntary dismissal of the
California action and re-filed the instant action. (*See id.* ¶ 59.)

JMC's complaint in this action alleges: (1) trademark infringe-
ment, under 15 U.S.C. §§ 1114 and 1125(a)(1)(A); (2) unfair
competition, under 15 U.S.C. § 1125(a); (3) trademark dilution,
under 15 U.S.C. § 1125(c); (4) common law trademark infringe-
ment; (5) dilution, under N.Y. Gen. Bus. L. § 360-l; and (6)
deceptive business acts or practices, under N.Y. Gen. Bus. Law §
349. It also seeks a declaratory judgment that Shefa has no right
to sell JMC products or use the trademarks, and injunctive relief
to enjoin future Shefa sales of JMC products and the use of its
trademarks. (*See* Compl. ¶¶ 87-167.) On February 18, 2021,
Shefa filed its answer, which included the following counter-
claims: (1) a request for a declaratory judgment that it has not
sold counterfeit JMC products nor violated JMC's trademarks;
(2) a claim of false or misleading representation and unfair com-
petition, under 15 U.S.C. §1125(a); (3) a claim of unfair
competition under New York common law; and (4) a claim of
tortious interference with contract and business relations. (*See*
Countercl. ¶¶ 73-126.) JMC filed a motion to dismiss Shefa's
counterclaims pursuant to Federal Rule of Civil Procedure
12(b)(6) on April 30, 2021. (*See* Mot. (Dkt. 29).)

## II. LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).[1] To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, does not suffice." *Id.* at 678. A counterclaim is facially plausible when "the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [original claimant] is liable for the misconduct alleged." *Id.* at 663.

## III. DISCUSSION

### A. Declaratory Judgment

Shefa seeks a declaratory judgment that it has not sold counterfeit JMC products and has not violated JMC's trademark rights. (Countercl. ¶¶ 81-82.) JMC argues that Shefa's declaratory judgment counterclaim is merely the "flipside" of JMC's infringement claim, so it should be dismissed as redundant. (Mot. at 3.) In opposition, Shefa argues that (i) this counterclaim is not redundant because it enlarges the dispute beyond trademark infringement to include the Amazon Reports, which claimed that Shefa sells

---

[1] This standard applies irrespective of whether the pleading that a party seeks to dismiss is a complaint or counterclaim. *See* Fed. R. Civ. P. 12(b), 13(b); *Zurich Am. Life Ins. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021) ("In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint.").

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

"counterfeit" products, and (ii) in the event that JMC withdraws this suit, the counterclaim allows Shefa to resolve the dispute and potentially obtain attorney's fees. (Opp. (Dkt. 30) at 6.) In its Reply, JMC contends that the counterclaim does not enlarge the scope of the dispute, and that Shefa has filed its answer in this case, so voluntary dismissal is prohibited under Federal Rule of Civil Procedure 41(a). (Reply (Dkt. 31) at 1-3.)

Generally, a district court has discretion to exercise declaratory jurisdiction. *See Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir. 1968). To guide its exercise of discretion, courts within the Second Circuit primarily consider the following factors: (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). On the first factor, courts will dismiss a declaratory judgment if it is the mirror image of a claim asserted in the complaint because "[t]he fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010).

To assess whether a declaratory judgment counterclaim is the mirror image of a claim, two early Second Circuit cases are instructive. First, in *Leach v. Ross Heater and Manufacturing Co.*, the plaintiff alleged that the defendant was selling products that infringed the plaintiff's patent. 104 F.2d 88 (2d Cir. 1939). The defendant counterclaimed, seeking a declaratory judgment that the patent was invalid, and the defendant had not infringed the patent. *Id.* at 89. The district court dismissed the declaratory judgment counterclaim. *Id.* The Second Circuit reversed because "the patentee may, for all that the defendant knows, withdraw his suit without prejudice and continue broadcasting assertions

of infringement." *Id.* at 91. Without judgment on the merits, a case or controversy would remain. The panel also noted that the plaintiff had threatened patent infringement actions against the defendant's customers, which highlighted the need for immediate relief. *Id.* Second, in *Larson v. General Motors Corp.*, the district court retained jurisdiction over a patent validity declaratory judgment counterclaim after the plaintiff consented to the dismissal of its patent infringement claim on the merits. 134 F.2d 450, 452 (2d Cir. 1943). The Second Circuit reversed, holding that "the validity of the patent had ceased to have any substantial importance to the parties as soon as the plaintiffs consented to judgment on the merits [of the infringement claim], and the court in the exercise of its discretion should have refused to adjudicate." *Id.* at 453. The panel distinguished *Leach* since the judgment in *Larson* "put an end to any controversy," and the plaintiffs had not threatened future suits, though the panel acknowledged that "they might do so." *Id.* at 453-54.

Courts in this circuit have interpreted *Leach* and *Larson* for the proposition that "a counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim." *Ferring B.V. v. Fera Pharmaceuticals*, No. 13-CV-4640 (SJF) (AKT), 2014 WL 4829053, at *6 (E.D.N.Y. Aug. 13, 2014), *report and recommendation adopted in* 2014 WL 4829458 (Sept. 29, 2014). In practice, this means that where there is a cause of action dealing with intellectual property infringement, and the declaratory judgment counterclaim is limited to intellectual property noninfringement, it is dismissed. *Compare Arista Records LLC v. Usenet.com, Inc.*, No. 07-CV-8822 (HB), 2008 WL 4974823, at *5 (S.D.N.Y. Nov. 24, 2008) (dismissing counterclaim seeking declaratory judgment of copyright noninfringement where defendant "d[id] not allege that Plaintiffs' copyrights are invalid, and the counterclaim reflects no independent case or controversy"), *and Maverick Recording Co. v.*

*Chowdhury*, No. 07-CV-200 (DGT), 2008 WL 3884350, at *2 (E.D.N.Y. Aug. 19, 2008) (dismissing counterclaim where "the basis of the counterclaim is that the defendant did not commit the infringing acts—a question that will either be necessarily resolved if the case is decided on the merits or become nonjusticiable if the plaintiffs voluntarily discontinue their suit"), *with Town & Country Linen Corp. v. Ingenious Designs LLC*, 18-CV-5075 (LJL), 2020 WL 3472597, at *14 (S.D.N.Y. June 25, 2020) (denying motion to dismiss declaratory judgment counterclaim where the "independent case or controversy" of patent validity "would remain viable after dismissal of the Plaintiffs claims"), *and Cannon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339 (DRH) (AYS), at *11 (E.D.N.Y. Sept. 29, 2017) (denying motion to dismiss noninfringement declaratory judgment counterclaim where defendants "have raised an independent controversy" of "whether the disclaimers are sufficient to prevent customer confusion"), *and Orientview Techs. LLC v. Seven for all Mankind, LLC*, No. 13-CV-0538 (PAE), 2013 WL 4016302, at *5 (S.D.N.Y. Aug. 7, 2013) (declining to strike noninfringement counterclaim where defendant also "challenge[s] the validity of [plaintiff's] patent" because "[w]ere the case to be dismissed short of a ruling on the merits, defendant would remain vulnerable to liability on the same claims").

Shefa seeks a declaratory judgment "that it has not sold counterfeit Josie Maran Products" nor "violated JMC's trademark rights or other rights, whether under Federal or State law." (Countercl. ¶¶ 81-82.) It is clear from the case law in this circuit that a declaration that Shefa has not violated JMC's trademark rights is the mirror image of JMC's trademark infringement claim and should be dismissed because it will "serve no useful purpose." *See Amusement Indus.*, 693 F. Supp. 2d at 311. However, Shefa argues that JMC may withdraw its suit and evade judgment on the merits. (Opp. at 6.) If this were to occur, it would preclude resolution of the dispute, and JMC could "continue broadcasting assertions of

infringement to Amazon," and Shefa might be unable to obtain attorney's fees (*Id.*) While the Second Circuit has recognized that "[t]he commencement of suit by the patentee does not necessarily mean that the controversy between him and the defendant is about to be determined on the merits," *Leach*, 104 F.2d at 91, the issue of patent infringement will be litigated on the merits in this action. Under the Federal Rules of Civil Procedure, since Shefa served its answer, JMC may not dismiss this case without "a stipulation signed by *all parties who have appeared.*" Fed. R. Civ. P. 41(A)(1)(A)(ii) (emphasis added); *see also Arista Records*, 2008 WL 4974823, at *5. Thus, unless Shefa consents, the issue of infringement will be litigated to final judgment in this action, and a declaratory judgment that Shefa has not violated JMC's trademark rights would not serve a useful purpose.[3]

Shefa further argues that the declaratory judgment counterclaim enlarges the scope of the dispute beyond trademark infringement to include the counterfeiting allegations contained in the Amazon Reports. (Opp. at 6; Countercl. ¶ 81.) However, the court is not persuaded that a declaratory judgment that Shefa has not

---

[3] Shefa also seems to suggest that the possibility of future Amazon reports could keep this controversy alive, and declaratory judgment is appropriate for this reason. Some courts in this circuit have recognized that "the continued threat of litigation can provide a basis for a declaratory judgment counterclaim." *Cannon*, 2017 WL 4357339, at *10. However, it is not clear that holdings about the threat of litigation would apply to future Amazon reports. Further, Shefa has not alleged that there has actually been a threat of future Amazon reports, just that JMC may continue to submit these reports. (*See* Opp. at 6.); *Cf. Fera*, 2014 WL 4829053, at *6 ("[U]nlike the cases cited by Plaintiff, the Complaint here alleges a threat of future litigation."); *Cannon*, 2017 WL 4357339, at *9 ("[T]he [Second Amended Complaint] alleges a threat of litigation.").

sold counterfeit products would "clarify[] or settl[e] the legal is-
sues involved." *Duane Reade,* 411 F.3d at 389.[4] The decision in
*Fossil Group Inc. v. Angel Seller, LLC* is instructive on this point.
No. 20-CV-2441 (WFK) (TAM), 2021 WL 5409605 (E.D.N.Y.
Aug. 27, 2021), *report and recommendation adopted in* 2021 WL
4520030 (E.D.N.Y. Oct. 4, 2021). In *Fossil Group,* the plaintiffs
alleged that defendants were selling counterfeit Michael Kors
watches in their Amazon storefront, which infringed upon plain-
tiffs' trademark. *Id.* at 1. The defendants counterclaimed, seeking
a nearly identical declaratory judgment to Shefa, that "they have
not sold counterfeit Michael Kors Products" nor infringed on
plaintiffs' "trademark rights or other rights, whether under Fed-
eral or State law." *Id.* at 10. The court noted that the defendants
clearly "have no legal right to sell counterfeit products," and thus
"the nature of the declaration Plaintiffs seek in this case," *i.e.*, "a
court determination that they did not sell counterfeit watches . .
. [was] *factual,*" not legal. *Id.* So too here, even if the counterfeit
issue did enlarge the scope of the dispute beyond trademark in-
fringement, whether or not the products were counterfeit is not
a legal issue for the court to declare, and thus declaratory judg-
ment is not appropriate.

On the first *Duane Reade* factor, the court finds that the declara-
tory judgment sought by Shefa would not "serve a useful purpose
in clarifying or settling the legal issues involved." 411 F.3d at

---

[4] The court is also skeptical of whether a declaratory judgment that the
products were not counterfeit actually enlarges the dispute. Shefa was no-
tified by Amazon about the Amazon Reports in a notice on March 14, 2019.
(*See* Countercl. ¶ 44.) This notice explained that a "rights owner" had re-
ported that products were "inauthentic" and thus in violation of a
trademark. (*Id.*) The message from Amazon suggests that Amazon was
concerned with the violation of trademark laws, and the authenticity of the
products was relevant only insofar as it bears on whether or not there was
a violation of JMC's intellectual property rights. (*See id.*)

389. Shefa's patent noninfringement declaratory judgment counterclaim "seek[s] to resolve legal and factual issues indistinguishable from those raised by Plaintiff's complaint," *Smith v. BarnesandNoble.com, LLC*, No. 12-CV-4374 (ALC) (GWG), 2014 WL 1088955, at *2 (S.D.N.Y. Mar. 18, 2014), which will be litigated to judgment. To the extent it is a distinct issue that enlarges the dispute, which the court doubts, whether the products were counterfeit is a factual issue inappropriate for declaratory judgment. *See Fossil Group*, 2021 WL 5409605, at *10. Accordingly, Plaintiff's motion to dismiss the first counterclaim seeking a declaratory judgment is GRANTED.

### B.   Unfair Competition & False or Misleading Representation Under Federal Law

Shefa's second counterclaim is for false or misleading representation and unfair competition under the Lanham Act, 15. U.S.C. § 1125(a). Shefa alleges that JMC disseminated false reports to Amazon to advance its business interests by removing Shefa's listings. (Countercl. ¶¶ 83-100.) JMC argues that this counterclaim should be dismissed because the Lanham Act does not apply to the conduct at issue since it is not commercial advertising or promotion, (Mot. at 3-4.), but Shefa insists that this conduct does in fact qualify as commercial advertising or promotion. (Opp. at 7-10.)

The Lanham Act provides, in relevant part, that:

> [a]ny person who . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who

believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).[5] The Second Circuit employs a three-part test to assess whether statements constitute "commercial advertising or promotion" under the Lanham Act: the statement

---

[5] Shefa does not specify whether its claim for false or misleading statements and unfair competition is brought under 15 U.S.C. § 1125(a)(1)(A) or (B). Section 1125(a) of the Lanham Act "principally provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising.'" *Resource Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).

The elements of the two differ. To bring a claim for false designation or infringement, a party must (1) "demonstrate its own right to use the mark or dress in question," (2) show that "the mark or dress is distinctive as to the source of the good or service at issue," and (3) "there is the likelihood of confusion between the plaintiff's good or service and that of the defendant." *ITC Ltd. v. Punchgini*, 482 F.3d 135, 154 (2d Cir. 2007). This test is most frequently associated with § 1125(a)(1)(A). *See id.* To bring a claim for false description or representation or false advertising, on the other hand, a party must show that: "(1) defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations." *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628-29 (S.D.N.Y. 2003), *aff'd* 355 F.3d 206 (2d Cir. 2004). This test is most frequently associated with § 1125(a)(1)(B). *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014).

Section 1125(a) does not contain a "specific Federal cause of action for unfair competition." *Id.* at 272. Consequently, courts sometimes group unfair competition claims with false designation and infringement and sometimes with false advertising. *See, e.g., Capri Sun GmbH v. Am. Beverage Corp.*, No. 19-CV-1422 (PAE) (DCF), 2022 WL 976270, at *30 (S.D.N.Y. Mar. 31, 2022) (grouping unfair competition with infringement); *Mitchell Grp. USA LLC v. Udeh*, 14-CV-5745 (DLI) (JO), 2017 WL 9487193, at *3 (E.D.N.Y. Mar. 8, 2017), *report and recommendation adopted in* 2017 WL 3208532 (E.D.N.Y. July 28, 2017) (same); *Nat'l Artists Mgmt. Co., Inc. v.*

must be "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004). The Second Circuit has set a high bar for what is sufficiently disseminated to the relevant purchasing public because "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). In *Fashion Boutique*, the panel found that "a total of twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers . . . is insufficient to satisfy the requirement that representations be disseminated widely." *Id.* at 58.

As a threshold matter, it is not clear that a report made to Amazon can be considered "disseminated sufficiently to the relevant purchasing public." *Id.* at 56. Courts in this circuit that have considered Lanham Act claims in analogous factual circumstances

---

*Weaving*, 769 F. Supp. 1224, 1230 (S.D.N.Y. 1991) (false or misleading representations claim styled as unfair competition).

Shefa alleges that the Amazon Reports were "sufficiently disseminated to actual and prospective customers . . . so as to constitute advertising," and the "false advertising and disparaging misrepresentations have caused Shefa to suffer." (Countercl. ¶¶ 90, 95.) Further, though Shefa selectively quotes from the language of § 1125(a)(1)(A) in its Opposition, it ultimately employed the test for whether statements are "commercial advertising or promotion" under § 1125(a)(1)(B) and insists that the statements qualify as such. (*See* Opp. at 7.) Finally, Shefa does not allege that it has rights to use the JMC trademarks nor anything else that indicates an intent to plead a false designation or infringement claim under § 1125(a)(1)(A). Thus, the court construes this as a false representation or advertising claim under § 1125(a)(1)(B).

have concluded that the answer is no. In *Fossil Group*, the court was faced with the identical question of whether allegedly "false, misleading, and defamatory statements in commerce through Amazon's infringement reporting tools" were actionable under the Lanham Act. 2021 WL 5409605, at *11. To satisfy the public dissemination element, defendant alleged, as Shefa alleges here, that these reports were designed to advance the plaintiff's business interests by removing the defendant's Amazon listing, and thus, the representations were sufficiently disseminated to actual and prospective customers. *Id.* However, the court found that those allegations did not add up to public dissemination even though they resulted in the suspension of the defendant's selling privileges, as was the case for Shefa. *See id.* This is because, at the end of the day, the dissemination was to Amazon, and the defendant "d[id] [not] allege facts that support an inference that Amazon in fact distributed derogatory information to its consumers, or that Amazon itself is the 'purchasing public.'" *Id.*

In *Eminah Properties LLC v. Energizer Holdings, Inc.*, the court considered similar allegations in the context of a motion to dismiss the complaint. 531 F. Supp. 3d 593, 598 (E.D.N.Y. 2021). The defendants had allegedly submitted false infringement reports to eBay, supposedly to "advance their business interests by removing [the] [p]laintiffs' listings and listing content from the eBay marketplace." *Id.* at 605. The plaintiff alleged that the defendants' "false reports directly resulted in the removal of listing content and were thereby disseminated to any actual or potential customers that sought to purchase [the] [p]laintiffs' products." *Id.* The court dismissed the complaint, finding that the "conclusory allegations about the chain of dissemination" did "not sufficiently allege that removal of content from a listing results in a dissemination to customers of private complaints." *Id.* Further, the court also noted that while district courts outside of the Second Circuit have on occasion allowed similar claims to proceed,

these other circuits do not employ the Second Circuit's public dissemination standard. *Id.* at 606.

Even if the court were to accept Shefa's argument that the Amazon Reports were indirectly disseminated to the public because the listing was removed, courts in this circuit have looked for a formal or informal campaign or for communications with a substantial portion of the relevant market in order to find sufficient dissemination to the relevant public. *See, e.g., Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045 (EK) (ST), 2021 WL 4502470, at *13 (E.D.N.Y. Sept. 30, 2021) (finding that the individual "communicated with a sufficiently large proportion of that market," where the individual "reached out to every customer that was advertising the [product]"); *UPS Store, Inc. v. Hagan*, No. 14-CV-1210 (WHP), 2015 WL 9256973, at *6 (S.D.N.Y. Nov. 18, 2015) ("The fact that the same misstatements were allegedly made at almost every Manhattan franchise location gives rise to a plausible inference that the statements were part of a UPS campaign."); *Gen. Sec'y, Inc. v. Commercial Fire & Sec'y, Inc.*, No. 17-CV-1194 (DRH) (AYS), 2018 WL 3118274, at *2, *8 (E.D.N.Y. June 25, 2018) (finding sufficient dissemination where confidential customer records were obtained and "used . . . to improperly [and repeatedly] solicit Plaintiff's customers"); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16-CV-3645 (KPF), 2017 WL 3129799, at *8 (S.D.N.Y. July 21, 2017) (holding that distribution of a brochure to current and prospective customers could plausibly be part of an organized campaign); *Sleepy's, LLC v. Select Comfort Wholesale Corp.*, No. 07-CV-4018 (TCP), 2008 WL 413813, at *4 (E.D.N.Y. Feb. 8, 2008) (allowing Lanham Act claim to proceed where "the Complaint adequately alleges a corporate policy by Defendant, not mere isolated instances"). Even if Amazon was the "relevant purchasing public," only three Amazon Reports were submitted. This small number of statements would likely place this case outside of the Lanham Act's reach, as it has been interpreted in this circuit. *See, e.g., Globe Cotyarn v.*

*Next Creations Holdings LLC*, No. 18-CV-4208 (ER), 2019 WL
498303, at *5 (S.D.N.Y. Feb. 8, 2019) ("Under the standards set
by *Fashion Boutique*, three messages sent to two customers in a
marketplace of an unidentified size are not sufficiently dissemi-
nated to the relevant purchasing public to fall within the Lanham
Act's coverage."); *SourceOne Dental, Inc. v. Patterson Cos., Inc.*,
328 F. Supp. 53, 67 (E.D.N.Y. 2018) (reasoning that "making a
statement to one of fifty potential customers does not qualify as
widespread dissemination"); *Drone Racing League, Inc. v. DR1,
LLC*, No. 18-CV-4093 (DLC), 2018 WL 6173714, at *6 (S.D.N.Y.
Nov. 26, 2018) ("[A] single slide presentation viewed by an un-
known number of employees of a single company does not meet
the threshold for public dissemination."); *Burton v. Label, LLC*,
344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018) (finding that state-
ments to "an unspecified number of . . . clients" out of an alleged
750 clients was not sufficiently disseminated); *Chamilia, LLC v.
Pandora Jewelry*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at
*9 (S.D.N.Y. Sept. 24, 2007) (holding that "six statements, most
directed at a single individual" were not sufficiently disseminated
despite the smaller size of the market). Accordingly, because the
Amazon Reports were not sufficiently disseminated to the "rele-
vant purchasing public," JMC's motion to dismiss the Lanham Act
claim is GRANTED.

### C.  Unfair Competition Under New York Law

Shefa's next counterclaim for unfair competition arises under
New York common law. JMC contends that this counterclaim
should be dismissed because the counterclaim under the Lanham
Act is not cognizable, and unfair competition under New York
law tracks the elements of a Lanham Act claim, with the addition
of a bad faith or intent element. (Mot. at 6.) Shefa does not object
to this characterization of what is required for a New York unfair
competition claim and instead argues that it has sufficiently pled
*both* a Lanham Act claim and a New York unfair competition

claim, and that this is a flexible and broad cause of action. (Opp. at 10-11.)

Courts in this circuit have consistently held that "[t]o establish a claim for common law unfair competition, the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016); *see also Eminah Props.*, 531 F. Supp. 3d at 606 (dismissing plaintiff's New York unfair competition claim "[f]or the same reasons" as it dismissed plaintiff's claim of false or misleading representation and unfair competition under the Lanham Act); *Kid Carr NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 753 (S.D.N.Y. 2021) ("The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith."); *Ebony Media Operations, LLC v. Univision Commc'ns Inc.*, No. 18-CV-11434 (AKH), 2019 WL 8405265, at *6 (S.D.N.Y. June 3, 2019) (dismissing plaintiff's New York law unfair competition law "for the same reasons" underlying the dismissal of the Lanham Act false advertising claim). Because the court has found that Shefa's Lanham Act counterclaim is not cognizable, its New York common law unfair competition claim is similarly not cognizable. *See Emina Props.*, 531 F. Supp. 3d at 606. Accordingly, JMC's motion to dismiss the New York common law unfair competition claim is GRANTED.

### D.  Tortious Interference with Contract and Business Relations

Shefa's final counterclaim is for tortious interference with its business relationship with Amazon. JMC moves to dismiss this claim, arguing that it is more properly characterized as a defamation claim because the "entire claim is premised on the harm flowing from damage to [Shefa's] reputation allegedly caused by [JMC's] supposed false statements" and thus is time-barred. (Mot

at 7.) In response, Shefa maintains this counterclaim arises out of damage to its business relationship with Amazon and is "not solely grounded in harm to its reputation." (Opp. at 11-12.)

Under New York law, there is a one-year statute of limitations for defamation claims where "damages [are] only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order). Conversely, for a tortious interference claim, there is a three-year statute of limitations "where a complaint does not rely *merely* on *generalized* reputational harm, and instead relies on economic injury." *Global Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *2 (2d Cir. Mar. 18, 2022) (summary order) (emphasis in original). Under New York law, the elements of a claim for tortious interference are: (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance; and (4) damages. *See Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001).

In its Reply, JMC relies heavily on *Global Supplies NY v. Electrolux Home Products, Inc.*, a factually similar case dealing with intellectual property reports made to Amazon, in which the Amazon seller was suspended from Amazon for more than half of a year. No. 19-CV-4823 (LDH) (CLP), 2021 WL 1108636, at *3 (E.D.N.Y. Mar. 23, 2021). The court found that "the commercial and financial injury complained of by Plaintiff flows directly from the harm on Plaintiff's reputation caused by the allegedly libelous IP Complaints," and thus "Plaintiff's claim for tortious interference should be properly construed as a defamation claim subject to a one-year statute of limitations." *Id.* A year later, however, the Second Circuit reversed this decision, finding that "[t]he claim

sounds in tortious interference because it is chiefly based on economic injury, not merely generalized reputational harm." 2022 WL 815795, at *2.

In light of the Second Circuit decision, Shefa renewed its argument that this claim is properly brought as a tortious interference claim, rather than defamation, in a letter to the court on June 8, 2022. (*See* Shefa Ltr. (Dkt. 37).) Shortly thereafter, JMC responded, distinguishing the Second Circuit's decision in *Global Supplies* on several grounds. (*See* JMC Ltr. (Dkt. 38).) First, JMC argues that *Global Supplies* is distinguishable since in that case the defendant was terminated from Amazon, whereas Shefa was only briefly suspended. (*Id.* at 1.) The court disagrees. The Second Circuit found that the report in *Global Supplies* constituted tortious interference because the "complaint had the specific effect of causing Amazon to terminate its business relationship with Global Supplies," and not "some generalized reputational harm as a result of [the] false complaint, or that the defendants' complaints merely harmed its ability to form business relationships with Amazon and others." *Global Supplies*, 2022 WL 815795, at *2. Accordingly, the Circuit's reasoning is not limited to scenarios in which there was termination of the business relationship; it can apply to any situation in which there was an "economic injury" that had a "specific effect" on a business relationship. *Id.* Here, Shefa claims that the Amazon Reports "directly and proximately caused disruption of Shefa's relationship and contract with Amazon," and "Shefa was damaged by the suspension of these listings by losing revenue related to Josie Maran Products." (Countercl. ¶¶ 115, 124.) While temporary suspension may result in less harm to the relationship and associated revenues than termination, Shefa's claim asserts an "economic injury" resulting from even the temporary interference with its business relationship with Amazon. (*See* Countercl. ¶¶ 110, 116, 124.)

Second, JMC argues that unlike the defendant in *Global Supplies*, which never retracted its infringement reports, JMC promptly retracted its reports. (JMC Ltr. at 2.) Again, the Second Circuit's decision does not rest on the fact that there was no retraction. The fact that the defendant in *Global Supplies* did not retract merely meant that the length of time during which the defendant was unable to sell, and thus was accruing losses, was longer. Here, Shefa was nonetheless injured by losses that occurred in the intervening period between the Amazon Reports and restoration of its selling privileges after the retraction. Furthermore, Shefa alleged that losses continued even after JMC notified Amazon that the reports were filed in error because of the way the Amazon algorithm works. (*See* Countercl. ¶ 72.) Thus, while Shefa's losses may have been mitigated by a quick retraction, there were still economic losses as a result of JMC's interference in the business relationship.

Third, JMC argues that this case involves trademark infringement, whereas *Global Supplies* was a patent infringement case. (JMC Ltr. at 2.) JMC contends that "courts acknowledge" that a trademark report "is less likely to trigger consequences than a patent report," citing to a Northern District of Ohio case that was affirmed by the Sixth Circuit. (*Id.*) In the Ohio case, *NOCO Co. v. OJCommerce LLC*, the district court granted summary judgment on the issue of causation because it was not clear whether removal from the Amazon platform resulted from the plaintiff's trademark infringement report to Amazon or from another company's patent infringement report to Amazon. *See* No. 19-CV-2298 (JSG), 2021 WL 1788578, at *3 (N.D. Ohio May 5, 2021). The court reasoned that "there is no basis for a reasonable factfinder to determine that Amazon acted" on either of the infringement reports alone or on them together, and in so reasoning, noted that the patent report "more likely impacted Amazon's decision." *Id.* However, in addition to the fact that this

decision is not binding upon this court, on appeal, the Sixth Circuit explicitly disavowed this type of reasoning. *See NOCO Co. v. OJ Commerce, LLC*, 35 F.4th 475, 487 (6th Cir. 2022). The Sixth Circuit panel interpreted the district court to have "correctly recognized that there were three equally likely explanations for why Amazon deactivated [the] account"—either the trademark report, the patent report, or a combination—and further noted that "the district court's seeming conclusion that [the patent report] alone likely motivated Amazon's actions is probably an impermissible inference . . . . But we don't think that's what the district court meant here anyway." *Id.* Thus, this court is not persuaded that *Global Supplies* is distinguishable because it dealt with a patent report rather than a trademark report. Furthermore, whether a trademark report is less likely than a patent report to trigger consequences with Amazon is irrelevant. Here, Shefa alleges the trademark report did indeed directly and proximately cause the disruption to its relationship with Amazon. (*See id.* ¶ 115.) The fact that a patent report may or may not have been more likely to have the same negative effect has no bearing on the particular claim at issue.

Viewing the counterclaim in the light most favorable to Shefa, and adopting the persuasive reasoning of the Second Circuit's decision in *Global Supplies*, the court concludes that this counterclaim is appropriately characterized as a claim for tortious interference. Shefa asserts lost revenue resulting from suspension and disruption of its relationship and contract with Amazon caused by JMC's complaints. (*See* Countercl. ¶¶ 115, 119-120, 124). The fact that the counterclaim may contain allegations of defamation does not render it a defamation claim. *See Global Supplies*, 2022 WL 815795, at *2. Shefa plausibly alleges the elements of a tortious interference claim under New York law: (1) Shefa was in a contractual relationship with Amazon; (2) JMC was aware of Shefa's relationship with Amazon; (3) JMC

intentionally interfered with the relationship by knowingly submitting false Amazon Reports; and (4) the Amazon Reports led to the temporary removal of Shefa's listing content, which caused the disruption of Shefa's relationship and contract with Amazon, resulting in diminished performance metrics, lost revenue, and increased risk of account suspension. (*See* Countercl. ¶¶ 14-26, 36, 42, 48-49, 53-54, 111-124.); *Albert*, 239 F.3d at 273-74. The factual allegations contained within the counterclaim "possess enough heft to show the pleader is entitled to relief." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Having determined that Shefa's claim is substantively a claim for tortious interference, the court concludes that the claim falls within New York's three-year statute of limitations since the Amazon Reports were filed in 2019, and this counterclaim was filed in February 2021. *See* N.Y. C.P.L.R. 214(4); (Countercl. ¶ 50.) Accordingly, JMC's motion to dismiss the tortious interference counterclaim is DENIED.

## IV. CONCLUSION

For the reasons stated above, JMC's motion to dismiss the counterclaims for a declaratory judgment, for unfair competition and misleading or false representation under federal law, and for unfair competition under New York common law is GRANTED. JMC's motion to dismiss the counterclaim for tortious interference with a business relationship is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         August 2̲3̲, 2022

s/NGG

NICHOLAS G. GARAUFIS
United States District Judge